By the Court.—Jones, J.
Under the present exceedingly liberal rule of construction of pleadings, this action, to speak in the former technical language of the law, might be regarded either as an action in assumpsit for goods sold and delivered, or an action on the case for deceit arising out of fraud in procuring credit for the price of the goods, or an action on the case for deceit in falsely representing the credit of the Hicks Company.
The principles which govern this court (Lorillard Ins. Co. v. Meshural, 7 Robt. 308), in disposing of motions to vacate orders of arrest where the facts on which the order issued are those which constitute the cause of action, are different from those which obtain, when the order is granted on facts which are extrinsic to those constituting the cause of action.
In the first class of cases, as the controverted facts • must necessarily be passed on by the jury, and as on a judgment entered on a verdict for the plaintiff, he would, as matter of course, be entitled to an execution against the body, if an' execution against the property should be returned unsatisfied, in whole or in part, the court will not on motion infringe on the province of the jury, and render a decision on the facts which may possibly affect the jury in their deliberations, and which, if they should arrive at a conclusion different from the court, would deprive the plaintiff of the benefit of the security taken on the arrest. In this case, therefore, the court will not vacate on motion, unless on conceded facts the law is against the plaintiff, or the *578 proof is of such nature as, if it were adduced on the trial, the court would be obliged to either nonsuit or direct a verdict for the defendant.
In the other class of cases, as the disputed facts cannot be submitted to the jury, the court is necessarily called upon to pass on them on the motion, and to make up its determination on those principles which appertain to the decision of questions of fact on a trial thereof by jury, or referee or the court.
It becomes necessary then, on motions of this character, to determine to which class the action belongs. If, in arriving at the determination, any doubt arises, the leaning of the court should be in favor of personal liberty.
If then the plaintiff inserts in his complaint such allegations as to render it uncertain to which class the action belongs, and as to whether the jury will be called on to pass upon the matters authorizing an arrest, the court, on a motion to vacate an order of arrest, will construe the pleading to contain a cause of action founded solely on matters which do not authorize an arrest.
In this view the present action must, on this motion, be considered as an action in assumpsit for goods sold and delivered.
Therefore the averments of the representations on which the plaintiffs were induced to sell the goods on credit, are to be regarded as surplusage, and not issuable ; while the averments of those representations on which the plaintiff, as alleged, was induced to substitute the company in the place of the defendant as their creditor, must be deemed as inserted to avoid an anticipated defense, and not as forming any part of the cause of action.
Regarding this, then, for the purpose of this motion, as a simple action for goods sold and delivered, it devolved on the court to pass on the question as to *579 whether there was fraud in obtaining the goods, &c., on credit or not, on the merits; and in passing on that, the principles which obtain in the above mentioned second class of cases are applicable.
The only direct proof on the subject of the representations made at the time of the opening the account, is that furnished by the parties themselves—the plaintiff on the one side and the defendant on the other.
The plaintiff first swears in effect that defendant represented that he had two hundred thousand dollars, over and above all his obligations; and then, after reading defendant’s affidavit, admits that defendant did state that some of his property was confiscated, but swears that defendant stated that he had two hundred thousand dollars of available means without reference to the confiscated property. 0
Defendant, on the other hand, swears that the only representation that he made was that he was solvent, that he would have a large amount of available means as soon the government should restore his property, that he bad been pardoned, and had been informed by the attorney-general and others that the effect of said pardon would be the immediate restoration of his property.
This first question is, which is correct in his version of the conversation ?
The affirmative rests on the plaintiff to maintain, by preponderating evidence, his allegation of fraudulent representation. Unless he derives from the other evidence, facts and circumstances appearing on the motion, more support than the defendant, he must fail on this point, for in that event the proof would be either balanced or the preponderance would be in favor of defendant.
All the affidavits (including those relating solely to the representations alleged to have been made in re-respect to the company) have been carefully scrutinized to ascertain whether anything therein contained lends *580 more support to the plaintiff than to defendant, and the conclusion arrived at is that there is-not.
But there .are some matters -which render it more probable that the defendant is correct, and the plaintiff wrong. About three months before the representation he wrote to plaintiff’s witness a business letter from London, in which he gave a specific enumeration of what his property will consist of, as well as his estimated value of it upon a pardon being granted. This letter was shown to plaintiff. Again: Budd (Sharp’s partner) testified that in all defendant’s dealings with that firm he found defendant straightforward and manly, which evidence is corroborated by the above letter.
It is not probable that a man of such a character, should, in the short space of three months, make to a person to whom Sharpe introduced him, and with whom he knew Sharpe had business transactions, representations for the purpose of advancing the very business in reference to which said letter was written (and in reference to which it was -shown to plaintiff), other than such as were consistent with that letter; but it is probable that under such circumstances his representations would be consistent with the facts in the letter.
Again: in a conversation had with Sharpe a short time after the alleged representation, he stated to him that he told plaintiff he had ample means to carry on the business. This evidence was introduced by the plaintiff ; its effect is, while it does not impugn defendant’s version as to the rest of the conversation had with plaintiff, to justify to some extent his statement that no amount was mentioned.
It would seem that the plaintiff’s version is rather the result of his reasoning upon his recollection of the contents of the letter, and the statements of the defendant, than a statement of the substance of the conversation. His recollection of the letter was that it showed *581 defendant to be worth over two hundred thousand dollars, if a pardon was granted, and coupling that with the statement that a pardon had been obtained, and that its effect would be an immediate restoration of the property, his mind instantly reached the conclusion that the defendant was then worth, in immediately available means, over two hundred thousand dollars.
The result thus reached was more firmly fixed in his mind than the conversation itself, and it is not surprising, that after the lapse of one year and nine months, he should give the result thus arrived atas the substance of the conversation.
The statement in his subsequent' affidavit can have, under the circumstances, but little weight attached to it.
The next question is, whether the representation testified to by defendant is substantially true.
He had at that time property to the
amount of...................... $50,000 and over
since paid into the Hicks Company.
Real estate to the amount of....... 100,000 and over
then under confiscation. ' .•
Accrued rents under confiscation, say 8,000
Other property, as shown8 by bankruptcy proceedings, valued at.... 22,000
$180,000
By the bankruptcy proceedings it appears that on December 7, 1868, the defendant, besides the indebtedness to plaintiff, was only in-
debted to his father in.......... $12,000
James Hoy, in.................... 500
But it nowhere appears that this indebtedness existed at the time of the representation.
It also appears that he had at that time his pardon, and had been advised that the effect thereof was to im *582 mediately restore his property, which advice was subsequently confirmed by the decision of the circuit court.
It is suggested that in the bankruptcy proceeding no mention is made of any real estate as belonging to the defendant.
This may be accounted for by the fact that at time of the filing of the petition in bankruptcy, the decision of the district court holding that the pardon of the president did not restore the property, was in full force and unreversed.
The facts in this case indicate pretty clearly that defendant’s financial embarrassments and inability to successfully carry on the business of the company (in which event this suit would not, in all probability, have been instituted), arose out of the refusal by the authorities to restore his property, and the adverse decision of the district court, all of which was contrary to the confident expectation and belief of the defendant, and to the legal advice given him, and, indeed, contrary to the law and his just rights.
Such refusal and adverse decision must, of necessity, have seriously interfered with his command of money, or realizing on his property.
The decision vacating the order of arrest was correct. The exoneration of the bail follows, of course, from the vacating the order of arrest, subject to be revived if the vacatur be reversed..
The order below should be affirmed, with costs.
THE END.